[Crim. No. 2587.   First Dist., Div. One.   June 10, 1949.]

In re LUPE OROSCO, on Habeas Corpus.

Alfred J. Hennessy for Petitioners.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, Dion R. Holm, City Attorney, Edward F. Dullea, Deputy City Attorney, Charles P. Scully and Thomas M. Mulvihill for Respondents.

BRAY, J.—Petition for a writ of habeas corpus. The principal question is whether in a proceeding of this kind, the recital in the judgment of the juvenile court that due notice

of the hearing, in which a child was declared a ward of that court, was given to its mother, is binding on this court.

The petition sets forth that on August 5, 1945, Martha Ann Orosco was born to Lupe Orosco (one of the petitioners), an unwed mother; that on September 27, 1945, she was placed with Amanda and Herman Bilgera (the other petitioners). On January 6, 1946, the mother consented to the adoption of the child by the Bilgeras, who filed a petition for adoption, which is still pending. On February 12, 1946, the Bilgeras notified respondent James Murray, assistant director of Catholic Social Service of the Archdiocese of San Francisco, a corporation, and Little Children's Aid, an unincorporated association, that they would take financial responsibility for the child, and subsequent to February 26, 1946, the Bilgeras at their own expense have provided full care, including medical care, of said child. On March 25, 1946, a petition was filed in the juvenile court to the effect that the child came within the provisions of subdivisions (b) and (c) of section 700 of the Welfare and Institutions Code, and giving the name of the mother and her address in San Francisco, and the name of the alleged father and his address as Williams, Arizona. On April 8, 1946, a judgment was entered declaring the child a ward of the juvenile court and committing it to the care of Little Children's Aid. This judgment recited: "Due and legal notice of the hearing of said petition has been given to all parties entitled thereto." In the petition here, the petitioners allege that, in fact, no notice of the hearing in the juvenile court was given to the mother or to the Bilgeras, who then had the physical custody of the child, and that the order was based upon false testimony given at the hearing. They also allege that on November 16, 1948, at the direction of said James Murray, one Helen Shands (actually it was Rose B. McGrorey, assistant probation officer) swore to an affidavit for the issuance of a warrant for the arrest of the child, and that pursuant to such warrant the child was taken from the Bilgeras and turned over to the Little Children's Aid. They then ask that a writ of habeas corpus issue directed to the said James Murray, assistant director of Catholic Social Service of the Archdiocese of San Francisco, a corporation, to the Little Children's Aid, to Mrs. Myrtle Williams, director of social welfare of the State of California (at the hearing of the writ, upon stipulation, the proceedings were dismissed as to her), and to George W. Ososke, chief juvenile probation

officer of the city and county of San Francisco, to produce the child.

Upon the representation in said petition that no notice had been given the mother of the child of the proceedings in the juvenile court, we issued the writ directed to the persons above named. Upon the hearing, returns were filed by them, in which they set up the proceedings in the juvenile court, produced its record, and contended that, under the juvenile court order of April 8, 1946, the custody of said child was granted to Little Children's Aid, and that such order was still in full force and effect. They alleged that the Bilgeras had refused to release the child to Little Children's Aid for replacement in another foster home, and that thereupon they had caused the warrant to issue, and that the child is now in the custody of said Little Children's Aid in a certain licensed foster home.

At the hearing it was stipulated that the record in the juvenile court does not contain any evidence of service of notice of the hearing upon the mother, other than the recital in the order above set forth. Also, petitioners requested that the mother and the Bilgeras be sworn and permitted to testify that none of them had been given any notice of the juvenile court hearing.

Can the petitioners on habeas corpus attack the finding of notice in the juvenile court order? The authorities are well settled to the contrary, holding that the recitals in a judicial order attacked on habeas corpus must be taken as true. (*In re Shortridge*, 5 Cal.App. 371 [90 P. 478]; *Ex parte Ah Men*, 77 Cal. 198 [19 P. 380, 11 Am.St.Rep. 263].) As said in *Ex parte Ewell*, 71 Cal.App. 744 [286 P. 205], in a proceeding in habeas corpus to secure the release of petitioner from custody on a commitment for contempt of court (p. 746): ". . . we do not agree with petitioner that in a *habeas corpus* proceeding a petitioner may go behind the judgment and offer evidence to impeach the facts and matter adjudicated therein; those facts must be taken as true." (See, also, *In re Nicholls*, 74 Cal.App. 504 [241 P. 399], and *In re Jones*, 34 Cal.App.2d 77 [93 P.2d 185].) Showing how far the courts have gone under this rule is the decision in *In re Koester*, 56 Cal.App. 621 [206 P. 116]. There the petitioner had brought a proceeding on habeas corpus to secure his release from Folsom State Prison on the ground that the superior court which convicted and sentenced him did not have jurisdiction of his person. The petition was denied, the court say-

ing (p. 626) : ". . . the judgment of conviction being in all respects valid upon its face, cannot in a collateral attack thereon, be nullified or disturbed, and it, therefore, follows that the mere statement of facts in a petition for a jurisdictional writ impeaching such judgment cannot of itself have the effect of countervailing the legal force of such judgment."

In *In re Tiffany*, 49 Cal.App. 44 [192 P. 547], the father of a minor sought on habeas corpus to show that the order of the juvenile court making the son a ward was illegal because, as alleged, no notice of the hearing had been given the father. Just as in our case, "The judgment in this case recites that the steps prerequisite to jurisdiction were taken . . ." It was held: ". . . on collateral attack, the recitals are conclusive on this court. The petitioner in this proceeding is not permitted to prove that any statement contained in the judgment is false; and no evidence can be received to contradict the judgment, except to be in a proceeding in the superior court, brought directly for that purpose. (*Ex parte Sternes*, 77 Cal. 156 [11 Am.St.Rep. 251, 19 P. 275].) The judgment being valid on its face cannot be impeached in this proceeding." (P. 45.)

In *People ex rel. Pollock* v. *Bogart*, 58 Cal.App.2d 831 [138 P.2d 360], the juvenile court adjudged three children wards of that court and committed them to foster homes. About a year later, and long after the time for appeal had elapsed, the grandmother moved the court to set aside the orders making the children wards, on the ground that at the time of the original proceeding and theretofore, the children had been in her care and custody, and that no notice of the proceedings had been given her. The trial court, on this motion, found that except as to the recital in the orders declaring the children wards, the record "was silent as to the actual giving of notice," just as in our case, no *proof* of service appears in the record. The appellate court held that in spite of this fact "it could not be presumed . . . that notice was not properly given in view of the recital in the orders that 'due and legal notice' had been given to 'all parties entitled thereto'; . . . The appellant's offer of proof in rebuttal to the findings was refused on the ground that such motion constituted a collateral attack on the judgment; that therefore 'the court is limited to an inspection of the record only, which appears valid on its face' . . ." (P. 834.) See, also, *In re Lamson*, 50 Cal.App. 553 [195 P. 735], where the court

held sufficient a finding in the minutes of the juvenile court that the parents "were present in open court."

In *Estate of Eikerenkotter*, 126 Cal. 54 [58 P. 370], the court pointed out that lack of notice must affirmatively appear on the record before that record may be collaterally challenged. There, after the time for appeal from an order of guardianship of a minor had expired, the person having the custody of the child at the time the proceedings were commenced, applied to the court to set aside its order on the ground that no notice of the hearing had been given her. The Supreme Court upheld the order of the superior court denying the application, even though there was nothing in the record to show proof of service. It said (p. 56) : "The fact of service, and not the proof of service, gives a court jurisdiction to hear and determine. Here there is nothing in the record to disprove the fact of service of the notice upon the person having the custody of the minor. Lack of jurisdiction must be affirmatively shown by the record." The same principle is set forth in *Ex parte Ah Men, supra* (77 Cal. 198, 202) where the court said : "Nearly all of the objections urged against the validity of the judgment, convicting petitioner of a contempt, are answered by the recitals in the judgment itself. *If the record were silent as to the jurisdictional facts, jurisdiction would be presumed,* but the judgment itself recites all of the facts necessary to the exercise of jurisdiction by the court." (Emphasis added.)

In *In re Spiers*, 15 Cal.App.2d 487 [59 P.2d 838], the order making the child a ward of the court and giving its custody to the probation officer was silent on the question of service of notice of the hearing on the mother who had custody of the child at the time. There was nothing in the record to show that she was present at the hearing, had waived service of citation, or had received notice of any kind. The order was further defective in failing to find on any of the facts necessary to bring the child under the provisions of the juvenile court law. It did not even find that the welfare of the child required that her custody be taken from her mother or that she be made a ward of the court. The mother refused to obey the order. Some months later, the probation officer filed a petition in the juvenile court asking that the child be adjudged a ward of the court on the ground that the child (p. 492) "has failed, neglected and refused to obey the orders and directions of the probation . . . officer . . . as required by the order" above mentioned. The mother was present at

the hearing of this petition. The court then again made the child a ward, placing it in the custody of the probation officer. In a habeas corpus proceeding to secure the release of the child from custody under the latter order, the court held that it was a void order, as it was based upon the charge that the child had refused to obey the first order, which was also a void order, and, therefore, the child was under no obligation to obey it. The first order was void, because the court did not find existing facts which would bring the child, or its parent, within the terms of the juvenile court law, and it made no finding of, nor did the record show, due notice given the mother. In referring to the hearing of the second petition the court said (p. 492) : ''Nothing else appearing, the recital of the court that due notice had been given to all persons entitled thereto would necessitate a holding that citation had been issued and properly served.'' In our case the order finds that due notice was given and also finds the facts necessary to bring the child within the juvenile court law.

The matter came before the court again in *People* v. *Spiers*, 17 Cal.App.2d 477 [62 P.2d 414], on an appeal by the mother from a conviction of the crime of taking the child away from the custody of the probation officer, and the court again passed on the validity of the first order mentioned in the case in 15 Cal.App.2d, which there had been held void because, among other things, it failed to find that notice of the hearing had been given the mother. In *People* v. *Spiers,* the respondent contended that in spite of this lack in the order and in the record, under the rule mentioned in some of the cases (p. 484) '' [E]verything necessary to give the court jurisdiction will be presumed to have been taken or done unless the contrary appears on the face of the record.'' The court held that this rule is true as a general proposition, but stated that the juvenile court law provided that a citation giving 24 hours' notice must be given to the parent with whom the child resides, and that the hearing was had and the order made on the same day the petition was filed. Therefore, the impossibility of giving the mother the 24 hours' notice showed conclusively on the record. The court then referred to the rule that ''Where opportunity is given for the service of summons, and nothing further appears, it will be presumed that service of summons has been had according to the statutes providing therefor.'' (P. 484.) It then pointed out that the rule did not apply in their case for the reason that ''our attention has not been called to any case, nor in our search of the authorities have

we found any case where the record shows the impossibility of serving a citation as required by the statutes, that it will be presumed that the person to whom the citation should have been issued voluntarily appeared in the action and waived service. In other words, where it appears from the record that the statutes providing for the service of notice could not have been followed, it will not be presumed that the person to whom the citation should have issued, and to whom notice required by the statute should have been given, appeared and waived service of notice.'' Thus the peculiar facts of the Spiers cases are entirely dissimilar to those in our case, and although, because of those facts, the court held the juvenile court orders void, it approved of the general rules which are applicable here.

The Spiers case was distinguished in *In re Staser,* 84 Cal. App.2d 746 [191 P.2d 791]. Upon habeas corpus, the mother claimed that neither she nor the father of the child had received notice of the hearing in the juvenile court. The appellate court, after referring to the fact that the complaint in the juvenile court had been filed on April 15 and the hearing held on April 17, quoted the recital in the order to the effect that due and legal notice had been given to all parties entitled thereto, and then said (p. 753) : ''It may not therefore be held, in the absence of evidence to the contrary, as the Spiers case clearly infers, that it was impossible to have served the citation on the mother 24 hours before the hearing.'' The appellate court discharged the writ, but in its opinion used the following language (p. 753) : ''No evidence was adduced at the habeas corpus proceeding to show whether the citation was issued or whether the mother was or was not present at the hearing in the juvenile court. The petitioner's attorney did state that he wanted to call the mother as a witness for that purpose, but he failed to do so.'' This language might indicate that the court there thought that it had the power to receive evidence to overcome the juvenile court's finding of due notice, but the point was not discussed. The courts have considerably liberalized habeas corpus proceedings and allowed evidence dehors the record in a number of cases. (See art. in vol. 20, So.Cal.L.Rev. 304, and vol. 36, Cal.L.Rev. 420.) The above language in the Staser case, and the liberalization discussed in the Law Review articles, which refer to situations other than an attack by habeas corpus on the court's findings of due notice, do not justify an overruling of the cases hereinbefore set forth, which positively hold that the finding of the

juvenile court of due notice cannot be attacked on habeas corpus. Particularly is this so where, as here, petitioner-mother has the right to attack the judgment by a direct proceeding in the juvenile court, by bringing a proceeding there to set aside the judgment on the ground that no notice of the hearing was given her. Moreover, if, in fact, she did receive notice of that hearing, she can make application to the juvenile court under section 745 of the Welfare and Institutions Code to change, modify or set aside the order.

The petition alleged that the child came within the provisions of subdivisions (b) and (c) of section 700 of the Welfare and Institutions Code, and that she was then in the custody and control of Little Children's Aid; that the mother was an unmarried woman, and was "not willing to assume responsibility for the child's care and support"; and that the alleged father of the child had not contributed to its care or support and that "there are no relatives willing to provide the necessities of life for said child." These allegations are sufficient to bring the child within the provisions of subdivisions (b) and (c) of section 700 of the Welfare and Institutions Code. In *In re Gutierrez*, 47 Cal.App. 128 [190 P. 200], the allegation that the minors "have no parent or guardian capable of exercising proper parental control" was held to be a sufficient averment in a petition to give the court jurisdiction of a proceeding to declare them wards of the court. (See, also, *In re Staser, supra*, 84 Cal.App.2d 746 [191 P.2d 791].) The cases cited by petitioners do not hold otherwise. *In re Lewis*, 3 Cal.App. 738 [86 P. 996], *In re Mundell*, 3 Cal. App. 472 [86 P. 833], *Matter of Application of Burner*, 23 Cal.App. 637 [138 P. 90], were cases in which there was an entire absence of any averment in the complaint in the juvenile court bringing the child within any provision of the juvenile court law. In *In re Matter of Hill*, 78 Cal.App. 23 [247 P. 591], the court made the child a ward without making any finding of notice to the parents or of any fact which would bring the child within the provisions of the juvenile court law.

Under the authorities, therefore, as the juvenile court judgment recited that "Due and legal notice of the hearing of said petition has been given to all parties entitled thereto," no evidence can be admitted in this proceeding to attack that finding.

Petitioners attack the validity of the warrant of arrest. Inasmuch as the order of the juvenile court making the child a ward and granting its custody to Little Children's Aid is

binding on this court, we could not direct that the child be delivered to the mother or the Bilgeras, or both, even though the warrant of arrest were completely void. Had the Little Children's Aid obtained the physical possession of the child even without such a warrant, we could not in this proceeding disregard the juvenile court order and give the child to anyone other than Little Children's Aid. In view of that situation, nothing would be gained by passing upon the matters raised by petitioners concerning the warrant of arrest.

The motion to introduce evidence is denied, and the writ is discharged.

Peters, P. J., and Ward, J., concurred.