[Crim. No. 4451.   Second Dist., Div. One.   Apr. 11, 1950.]

In re FRED LANDE, on Habeas Corpus.

Schecter & Husar for Petitioner.

W. E. Simpson, District Attorney, Jere J. Sullivan and Ralph F. Bagley, Deputy District Attorneys, for Respondent.

WHITE, P. J.—This is an application for habeas corpus from a commitment of Fred Lande (hereinafter referred to as petitioner) on a judgment finding him guilty of contempt of court and sentencing him to a term of five days in the Los Angeles County Jail.

The charges of contempt upon which the commitment was based arise out of a judgment entered June 16, 1947, ordering said petitioner to pay the sum of $17.50 per week for the support of his child. The commitment recites that on the hearing of an order to show cause held February 14, 1950, as to why petitioner should not be punished for contempt in wilfully failing to comply with the foregoing order, and at which hearing petitioner was present, the court found that he was present at the time of trial and heard the original order made and pronounced, and "that said defendant had the ability to comply with the order, but had wilfully refused to do so." Whereupon petitioner was sentenced to five days in the county jail.

It further appears from the commitment that "said sentence was suspended upon the following conditions: that the hearing be continued to February 17, 1950, to give defendant an opportunity to pay the delinquency and defendant having been ordered to return on the 17th day of February, 1950, and after further hearing the Court now finds that the defendant has not complied with the aforementioned conditions upon which sentence was suspended in that nothing has been paid; the Court now directs that the order of 14th day of February 1950 suspending the sentence be vacated and set aside and said sentence of 14th day of February 1950 is now ordered into effect, and defendant is so committed to the county jail, pursuant to said sentence."

On the hearing before us the petitioner urges that the order of commitment was in excess of the jurisdiction of the court because the record does not disclose that any contempt was committed, in that the evidence shows and the court concluded that petitioner was unable to comply with the original order, but nevertheless pronounced judgment against him.

Respondent's contention is, that because the superior court had jurisdiction of both the person and the subject matter, this court is without power to review the proceedings in habeas

corpus and the judgment of the court below is therefore final.

■ It is of course elementary that as a general rule, on habeas corpus, the court is limited to the single question of jurisdiction, but there are exceptions to this rule as will be hereinafter pointed out.

The statute, section 1222 of the Code of Civil Procedure, declares that the judgment in cases of contempt is final and conclusive. Therefore, to one who has been adjudged guilty of contempt there remains but two remedies: habeas corpus and certiorari, and in each of them the scope of the inquiry which the court can make is precisely the same. Where necessary in order to determine jurisdiction, both the foregoing writs extend to the entire record of the court below and, to the evidence itself, when necessary (*In re Lake,* 65 Cal.App. 420, 423 [224 P. 126]). If, by reference to the whole of the record of the court below, even to the evidence itself, we can see that the court exceeded its power and consequently acted without authority of law, we have the right of such examination (*In re Lake, supra,* 424). As was said by Chief Justice Hughes in *Bowen* v. *Johnston,* 306 U.S. 19, 26, 27 [59 S.Ct. 442, 83 L.Ed. 455], "It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired. . . . the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." It should also be remembered that under our own California law there are situations in which habeas corpus is used, not as a test of jurisdiction, but to review a question of law that cannot otherwise be raised or is so important as to render the ordinary procedure inadequate. Thus it lies to test whether there is probable cause to justify the committing magistrate in holding the petitioner for trial (Pen. Code, § 1487; *ex parte Williams,* 52 Cal.App. 566 [199 P. 347]; *Application of Hartwell,* 28 Cal.App. 627 [153 P. 730]; see, also, cases cited in 13 Cal.Jur. 230, § 12; 25 Am.Jur. 170, § 37). The writ also lies to test whether the complaint charges a public offense (*Ex parte Williams,* 121 Cal. 328 [53 P. 706]; *Ex parte McNulty,* 77 Cal. 164 [19 P. 237, 11 Am.St.Rep. 257]) and that, even though this question falls within the jurisdiction of the trial court and may be raised on appeal.

■ In the instant proceeding, petitioner attacks the jurisdiction of the court below on the ground that there was no showing that he had the ability to pay in conformity with the

terms of the original order. We are cognizant of the rule that this being a question of fact, adjudication thereof, the court having jurisdiction of the person and subject matter, cannot be reviewed. That on the contempt hearing a prima facie case was established by the production of the original order to pay and proof of nonpayment (*In re Carpenter,* 36 Cal.App.2d 274, 278 [97 P.2d 476]). But upon such contempt proceeding the contemner may purge himself of the contempt by showing among other things, that since the making of the original order he has become unable to comply therewith (*In re Carpenter, supra,* p. 278).

That petitioner herein did so purge himself and that the court below so found at the conclusion of the contempt proceeding, is the contention here made.

In support of such contention petitioner has brought before us a certified Reporter's Partial Transcript of the contempt hearing, the correctness of which is not disputed by respondent. From such transcript it appears that at the conclusion of the hearing on the order to show cause in re contempt, the court said: ''I don't know, I have examined this file and certainly over the past few months, and perhaps for a longer period, this thing is like a couple of squirrels in a cage, going around and around. We are getting nowhere and accomplishing nothing. *It is very obvious that this man can't pay $17.50 a week out of $32.72 a week. Unless there is some showing of another amount of money, how can the man pay it? There is no point in finding him guilty of contempt of an order that he simply can't comply with.*'' (Emphasis added.)

After further discussion between counsel for the plaintiff, for petitioner, who was defendant in that proceeding, and the court, the judge said: ''Is the matter submitted?'' After a short colloquy between respective counsels in which the court's query was not answered, the court stated: ''There is something that should be straightened out but I have to go on what is before me. The order heretofore made as to modification is denied; the order to show cause in re attorney fees is denied. The defendant is clearly guilty of contempt. He has paid what he thinks he should pay and not what he is able to pay. The Court finds he is in arrears and that he has had the ability to comply with the order but has wilfully failed and refused. I sentence him to the County Jail for five days

and remand him to the custody of the Sheriff. This won't settle anything, but——.''

Thereupon, the following occurred:

''Mr. Schecter (attorney for petitioner herein): At the outset Your Honor stated it was obvious this man couldn't pay it. I am frankly amazed at the turn-about here since Your Honor first started to speak.

''The Court: I hoped that some agreement or something could be reached, but apparently it can't, with the attitude on both sides, so I have nothing to do but——.''

Following further discussion by petitioner's counsel the court stated: ''On Counsel's representation that there is a possibility of raising some money to apply on this arrearage, I am going to suspend execution of this sentence until Friday of this week. That will be the 17th. Defendant is ordered to return at 9:30 on Friday, the 17th.''

We are not furnished with a record of what transpired on February 17, at which time the court vacated the suspension of sentence imposed on February 14, other than appears in the commitment presented to us with respondent sheriff's return. But whatever may have occurred on February 17, no new judgment was pronounced on that day. The order was simply that the order suspending the previous judgment of February 14 sentencing petitioner to five days in jail be vacated, and that such previous judgment be enforced. Manifestly, if the previous suspended judgment was without authority of law, then the order of February 17 revoking its suspension and directing its enforcement was equally without legal effect.

Contempt of court is a specific criminal offense and summary in character. Though ancillary to a civil action it is not a civil proceeding. So distinctly criminal in its nature is a contempt proceeding that a mere preponderance of evidence is insufficient (*Hotaling* v. *Superior Court*, 191 Cal. 501, 504, 505 [217 P. 73, 29 A.L.R. 127]).

While upon the face of the commitment it would appear that the court was possessed of jurisdiction, yet by examining the proceedings at the hearing in the court below, as we have a right to do in determining whether the court exceeded its jurisdiction, it is manifest to us from the statement of the court hereinbefore quoted, that at the conclusion of the hearing on February 14, the court was convinced that ''it is very obvious that this man can't pay $17.50 a week out of $32.72 a week . . . There is no point in finding him guilty of contempt

of an order that he simply can't comply with." If a prima facie case of contempt was made out by presenting the original order and a showing of petitioner's failure to comply with it, the trial court was of the declared and announced opinion at the conclusion of the contempt hearing, that petitioner was unable to comply with the terms of the original order and was thereby purged of contempt. Under the showing made by the record now before us it must be concluded that the court below was admittedly without jurisdiction to impose a penalty for contempt, and that in issuing the commitment here under attack, acted in excess of its authority.

The superior court is clothed with ample means and authority to compel petitioner herein to obey its orders in re the support of his minor child. With that phase of its jurisdiction we are not here concerned. We are here confronted with a situation in which petitioner was adjudged in contempt for failing to comply with an order which, according to the court below, "he simply can't comply with." It is fundamental that a judgment of contempt can be sustained only when there is a conclusion arrived at by the court and a finding based thereon that the contemnor has the ability to comply with the order but wilfully refuses so to do.

For the reasons herein stated it follows that the writ should be granted and the petitioner discharged from custody. It is so ordered.

Doran, J., and Drapeau, J., concurred.