[Crim. No. 15830.    Second Dist., Div. Five.    Mar. 27, 1969.]

In re ROSE BLAZE on Habeas Corpus.

Howard Meyerson for Petitioner.

John D. Maharg, County Counsel, Jean Louise Webster, Deputy County Counsel and Lee E. Stark for Respondents.

AISO, J.—Culminating a series of contempt proceedings, stemming from a divorce action (Herber E. Blaze v. Rose Blaze, Los Angeles Superior Court No. WE D-8186), initiated by the plaintiff ("Herbert"), the trial court on November 1, 1968, made a minute order, which sentenced the defendant-contemnor ("Rose") as follows: "On each count of contempt, a total of fifteen, the defendant [Rose] is sentenced to five days County Jail, sentence on each count to run consecutively, and sentence on all but two counts is suspended for a period of one year on condition defendant commit no further violations of the order of *June 23, 1967*." (Italics ours.) Rose challenges the validity of this order by a petition for a writ of habeas corpus in this court. Having examined the record, augmented by the trial court file, in light of the applicable rules of law, we have concluded that the writ must be granted.

## I.

"It is settled that *habeas corpus* is an appropriate remedy to halt the enforcement of an invalid judgment of contempt." (*Kreling* v. *Superior Court* (1941) 18 Cal.2d 884, 887 [118 P.2d 470].) Habeas corpus may also be employed to review the jurisdiction of the trial court to punish and imprison for contempt. (*Ex parte Hollis* (1881) 59 Cal. 405, 407; *Ex parte Rowe* (1857) 7 Cal. 181; *Heller* v. *Heller* (1964) 230 Cal.App.2d 679, 682 [41 Cal.Rptr. 177]; *In re Selowsky* (1918) 38 Cal.App. 569, 572 [177 P. 301]; 12 Cal. Jur.2d, Contempt, § 81, pp. 104-105.) It is also the law that contempt proceedings being quasi-criminal in nature (*Hotaling* v. *Superior Court* (1923) 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127]) no presumptions of the sufficiency of a complaint or affidavit initiating an indirect contempt proceeding (*Frowley* v. *Superior Court* (1910) 158 Cal. 220, 224 [110 P. 817]), of the regularity, validity or sufficiency of the proceedings in support of the judgment (*In re Circosta* (1963) 219 Cal.App.2d 777, 785 [33 Cal.Rptr. 514]; *In re Mancini* (1963) 215 Cal.App.2d 54, 56 [29 Cal.Rptr. 796]; *In re Ny* (1962) 201 Cal.App.2d 728, 731 [20 Cal.Rptr. 114]), or of the

judgment (*Freeman* v. *Superior Court* (1955) 44 Cal.2d 533, 536 [282 P.2d 857] ; *In re Battelle* (1929) 207 Cal. 227, 255 [277 P. 725, 65 A.L.R. 1497]) can be indulged in.

██ One cannot be in contempt for a violation of an order (Code Civ. Proc., § 1209, subd. 5), unless there is a valid and enforceable order at the time the acts alleged to be in contempt of court are committed. (*McLaughlin* v. *Superior Court* (1954) 128 Cal.App.2d 62, 65 [274 P.2d 745] ; cf. *Cosby* v. *Superior Court* (1895) 110 Cal. 45, 52 [42 P. 460].) Any ambiguity in a decree or order must be resolved in favor of an alleged contemnor. (*Butler* v. *Superior Court* (1960) 178 Cal. App.2d 763, 765 [3 Cal.Rptr. 180].) ██ A preliminary minute order is merged into a formal written order or judgment covering the same subject. (*Heller* v. *Heller* (1964) *supra*, 230 Cal.App.2d 679, 681.)[1]

In *Neblett* v. *Superior Court* (1948) 86 Cal.App.2d 64 [194 P.2d 22], the court made a minute order on May 29, 1947, granting a divorce and ordering the defendant to pay plaintiff's attorney $1,500 as attorney's fees at the rate of $100 per month, commencing June 1, 1947. It further directed the prevailing counsel to ''prepare and submit findings and judgment.'' The judge signed the findings, conclusions, and judgment on August 21, 1947. On October 24, 1947, the defendant was ordered to show cause why he should not be punished for disobeying the minute order of May 29. 1947, in failing to make his June 1, July 1, and August 1, 1947, payments. On March 19, 1948, the trial court found the defendant in contempt and sentenced him to three days in jail. Upon certiorari the appellate court held that the minute order of May 29, 1947, could not be the jurisdictional basis for holding the defendant in contempt.

## II.

██ We now delineate the contempt proceedings with comment at appropriate places. To determine the validity of the order of November 1, 1968, which is challenged here, we are compelled to return to the fountainhead and retrace the successive steps which Herbert's lawyer and the trial court took in reaching the order attacked.

Upon a hearing in re pendente lite orders, the court made a

---

[1]Normally, a minute order later in time supersedes an earlier one upon the same subject matter. (*Levy* v. *Levy* (1966) 245 Cal.App.2d 341, 349-350 [53 Cal.Rptr. 790].) However, disposition of this proceeding does not require a determination of the effect of the minute order of June 23, 1967, *infra,* on the earlier minute order of July 15, 1965, *infra.*

minute order on July 15, 1965, which provided inter alia: "[B]y stipulation, each party is restrained from annoying, threatening, molesting or harassing the other in any manner whatsoever, and each is restrained from using vile or abusive language in the presence of the minor children of [sic] any of them, and from making derogatory remarks to or about the other in the presence of the minor children or any of them.". It also provided that the right of reasonable visitation was reserved to plaintiff Herbert, the father.

The minute order of June 23, 1967, opens with a recital, "Trial resumes from June 21 with parties and counsel present as heretofore," and concludes with: "AN INTERLOCUTORY JUDGMENT OF DIVORCE IS GRANTED TO EACH PARTY. Further order of the court is recited in open court and recorded in the reporter's notes, reference to which is hereby made. . . . Counsel for the plaintiff is directed to prepare findings of fact, conclusions of law, and judgment and submit same to opposing counsel for approval as to form and content prior to signature by the court."

No reporter's notes referred to by the foregoing minute order have been made a part of the record before us.

On August 31, 1967, the court signed an interlocutory decree for divorce, subsequently entered on September 1, 1967, which, inter alia, granted custody of the minor children to Rose, subject to reasonable visitation by Herbert. It spelled out the times for such visitations. The concluding paragraph of the decree provided: "IT IS FURTHER ADJUDGED that both parties be enjoined from threatening, annoying or harassing each other in any manner whatsoever and both parties are enjoined and each is restrained from using vile or abusive language in the presence of the minor children, or any of them, and from making derogatory remarks to or about the other in the presence of the minor children, or any of them."

Herbert's declaration in support of the original order to show cause issued October 30, 1967, stated in part: "That on the 15th day of June, 1965,[2] the above entitled Court made its Order stating that each party is restrained from annoying, threatening, molesting or harassing the other in any manner whatsoever. [ ¶ ] That on June 23, 1967, the above entitled Court made its Order, orally stated on June 22, 1967, and signed by the Court on August 31, 1967, [and reciting portion of the interlocutory decree relating to injunction against

_____

[2] The month of June instead of July is error; the divorce action was not filed until June 30, 1965.

threatening, annoying or harassing, etc., custody and visitation matters]. . . . [ ¶ ] That [Herbert] is informed and believes that [Rose] picked up a copy of the entire file from her former attorney . . . which included a conformed copy of the Interlocutory Decree of Divorce.''

Herbert's declaration further alleged nine specific acts of molestation, annoyance, or harassment occurring on: (1) June 24, 1967, (2) June 25, 1967, (3) August 4, 1967, (4) August 6, 1967, (5) August 13, 1967, (6) August 14, 1967, (7) August 18, 1967, (8) August 24, 1967, and (9) August 25, 1967. A general allegation that Herbert's visitation rights had been violated since August 1, 1967, was also set forth.

The order to show cause in re contempt, dated October 30, 1967, issued on the basis of the foregoing declaration of Herbert ordered Rose ''to show cause . . . why you should not be adjudged guilty of contempt of court and punished accordingly for wilfully disobeying the Order heretofore made on the *23rd day of June, 1967*. . . .'' (Italics ours.) November 9, 1967, was designated as the hearing date, but the hearing was continued to December 19, 1967. Hearing commenced on December 19, 1967, and was completed on December 20, 1967. The minute order of December 20, 1967, reads in part which is pertinent here: ''The court finds that the defendant [Rose] was present in court when the orders of *June 15 and June 23, 1967* were made; that she had the ability to comply with *said orders;* that she has wilfully failed and refused to comply with *said orders* and is therefore in contempt of court on at least the *nine counts set forth in the moving papers*. The matter of punishment is continued to January 12, 1968 at 9:00 AM in Department West 'B'.'' (Italics ours.)

The foregoing order of December 20, 1967, was void. We find neither an order of June 15, 1965, nor of June 15, 1967, in the record or the trial court file. So the portion of the order adjudicating contempt resting on the non-existent order of June 15, 1967, was a nullity. (*McLaughlin* v. *Superior Court* (1954) *supra,* 128 Cal.App.2d 62, 65.) Insofar as the adjudication of contempt on the nine counts is bottomed on the June 23, 1967, order, *Neblett* v. *Superior Court* (1948) *supra,* 86 Cal.App.2d 64, declared such an order void for being beyond jurisdiction.

On January 12, 1968, the court imposed sentence, suspended all except five days thereof upon conditions stated in the order, and continued further proceedings to February 15,

1968. On February 16, 1968,[3] the court upon its own motion made an ex parte order vacating the portion of its order of December 20, 1967, and of January 12, 1968, pertaining to the adjudication and sentence on the nine counts of contempt, and providing that said order was "made without prejudice to the moving party to refile the contempt." Had the orders of December 20, 1967, or January 12, 1968, been within the jurisdiction of the trial court to make, the court would not have had power to make this February 16, 1968, ex parte order of vacation, since even an erroneous judgment made within the jurisdiction of a court can "not be vacated by an ex parte order of the trial judge and without notice to the parties." (*Colby* v. *Pierce* (1936) 17 Cal.App.2d 612, 614 [62 P.2d 778].) Since the order of December 20, 1967, and the portion of the order of January 12, 1968, premised upon the earlier December order were both void, this order of February 16, 1968, may stand,[4] except insofar as it grants Herbert permission to renew contempt proceedings upon the grounds set forth in his declaration of October 30, 1967.

On February 28, 1968, the court issued an order to Rose to show cause why she should not be found guilty of contempt and punished for wilfully disobeying the order "made on *June 23, 1967* and signed by the Court on August 31, 1967, which Order and your disobedience of which are more fully described in the Declaration of Herbert" in support of the order to show cause, etc.

Herbert's declaration dated February 27, 1968, realleged the same orders (including the non-existent order of June 15, 1965) and the same acts of contempt which he had set forth in his declaration of October 30, 1967.[5] The nine specific counts were labelled 1 through 9 as before. The general allegation as

---

[3]The trial court file contains a stay of execution issued by division two of this court, dated February 8, 1968, staying execution of the orders of December 20, 1967, and of January 12, 1968, pending disposition of a habeas corpus proceeding apparently pending in that division at that time.

[4]"[A] court has inherent power, apart from statute, to correct its records by vacating a judgment which is void on its face, for such a judgment is a nullity and may be ignored." (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 574 [122 P.2d 564, 140 A.L.R. 1328].) " '[A] judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion at any time after its entry, by the court which rendered the judgment or made the order. [Citations.]' " (*Hayashi* v. *Lorenz* (1954) 42 Cal.2d 848, 851 [271 P.2d 18].)

[5]See pages 213, 214, *ante*, for contents of October 30, 1967 declaration.

to Herbert's visitation rights having been violated was labelled count 10. To these, two more counts, 11 and 12, were added for acts alleged to have been committed on January 25, 1968, and February 17, 1968, respectively.

On March 13, 1968, the court made a minute order continuing counts 11 and 12 to the next hearing date, finding Rose in contempt on counts 1 through 10 as alleged, and directing Herbert's counsel ''to prepare written finding in re contempt, approved as to form and content by opposing counsel, for signature by the court.'' Punishment was continued to October 10, 1968, upon certain conditions. On April 30, 1968, the court signed and filed a written attorney order holding Rose in contempt. It read in part which is pertinent here:

''On proof being made to the satisfaction of this Court, the Court finds as follows:

''That on the 15th day of July,[6] 1965, the above entitled Court made its Order stating that each party is restrained from annoying, [etc.].

''That on June 23, 1967, the above entitled Court made its Order, orally stated on June 23, 1967, and signed by the Court on August 31, 1967, [etc.].

''. . . . . . . . . . . .

''That the defendant, ROSE BLAZE, was in Court on *June 15, 1965,* and June 23, 1967, when the above orders were made. . . .

''The Court finds that the defendant, Rose Blaze, willfully disobeyed the Court's orders of *June 15, 1965* and June 23, 1967 on Counts 1 through 10, and is guilty of contempt of this Court on Counts 1 through 10 as hereinafter stated.'' (Italics ours.)

Ambiguities in any order or decree are to be resolved in favor of an alleged contemnor as we have mentioned before. Here there is actually confusion beyond ambiguity. By its order to show cause dated February 28, 1968, the court ordered Rose to show cause why she should not be held in contempt for disobeying the order ''made on June 23, 1967 and signed by the Court on August 31, 1967.'' In its order of April 30, 1968, ''holding defendant Rose Blaze in contempt of court,'' the court finds that an order was made on July 15, 1965, which is correct. But then it goes on to find that Rose was in court on *June 15, 1965,* and June 23, 1967, when the above orders (referring to the *July 15, 1965,* and June 23,

---

[6]The month appears as ''June'' in typing, which is corrected to read ''July'' in the judge's handwriting.

1967, orders) were made. It then finds Rose in contempt for disobeying a non-existent order of *June 15, 1965,* and the order of June 23, 1967. The latter order, as previously pointed out, cannot be the basis of contempt based upon acts committed prior to the interlocutory judgment signed on August 31, 1967, (entered September 1, 1967). (*Neblett* v. *Superior Court* (1948) *supra,* 86 Cal.App.2d 64.)

█ The fact that Rose's counsel approved the written order as to form and content did not grant the court contempt jurisdiction if none existed; subject matter jurisdiction cannot be conferred by counsel approving an ultra vires order. (*Roberts* v. *Roberts* (1966) 241 Cal.App.2d 93, 101 [50 Cal. Rptr. 408].)

· █ On August 27, 1968, Herbert filed another ''declaration for order to show cause in re contempt'' alleging three additional acts of contempt committed by Rose on April 7, 1968, April 27, 1968, and August 14, 1968. The order to show cause again calls on Rose to show cause why she should not be held in contempt for disobeying the order ''made on June 23, 1967 and signed by the Court on August 31, 1967.''

The court on November 1, 1968, made the following order which is being challenged by this habeas corpus proceeding: ''The matter of defendant's contempt was heard and submitted on October 31, 1968. As to the two counts of contempt continued from October 31, 1968 for determination, the court finds that the defendant [Rose] was personally present in court on *June 23, 1967 when the court's order* restraining her from annoying, molesting or harassing the plaintiff [Herbert] in any manner *was pronounced,* that she had the ability to obey said order, that she wilfully failed and refused to obey said order by conducting herself, on *January 25, 1968* and *February 17, 1968,* as set forth in the plaintiff's [Herbert's] declaration of February 28, 1968, and is therefore in contempt of court. As to the three counts of contempt alleged in the plaintiff's declaration of August 27, 1968, the court finds that defendant was personally present in court when the order of *June 23, 1967* restraining her from annoying, molesting or harassing the plaintiff in any manner was pronounced, that she had the ability to obey said order, that she wilfully failed and refused to obey said order by conducting herself, on *April 7, 1968, April 27, 1968, and August 14, 1968,* as set forth in the plaintiff's [Herbert's] declaration of August 27, 1968, and is therefore in contempt of court. The matter of punishment as to the ten counts of contempt found by the

court on March 13, 1968 was continued to October 31, 1968. On each count of contempt, a total of fifteen, the defendant is sentenced to five days County Jail, sentence on each count to run consecutively, and sentence on all but two counts is suspended for a period of one year on condition defendant commit no further violations of the *order of June 23, 1967*. Stay of execution of sentence is granted to November 6 at 12 noon.'' (Italics ours.)

Under any theory, the minute order of June 23, 1967, was merged into the interlocutory judgment signed on August 31, 1967, and entered on September 1, 1967. (*Heller* v. *Heller* (1964) *supra*, 230 Cal.App.2d 679, 681; *Neblett* v. *Superior Court* (1948) *supra*, 86 Cal.App.2d 64, 66.) So any alleged act committed subsequent to September 1, 1967, must be based on a violation of the order against threatening, annoying, or harassing each other [etc.] in the judgment. Since the acts averred to have been committed by Rose on January 25, February 17, April 7, April 27, and August 14, of the year 1968, occurred when the order of June 23, 1967, had become *functus officio*, these acts cannot be in contempt of that minute order. We then reach the conclusion that the sentences pronounced on November 1, 1968, were not supported by any valid adjudication of contempt. Consequently, the sentences were void.

### III.

The writ is granted; the order to show cause heretofore issued is discharged; the trial court is directed to exonerate the bond ($500, plus penalty assessment) posted in that court pending disposition of this proceeding.

Kaus, P. J., and Stephens, J., concurred.